UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HECTOR GUERRERO AVILA, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 10-11800-RGS |
| HAROLD W. CLARKE | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION ON
## PETITION FOR WRIT OF HABEAS CORPUS

February 6, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

Petitioner, Hector Guerrero Avila (the "defendant"), has brought a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 following his conviction on January 26, 2006 for first degree murder and unlawful possession of a firearm.  The Massachusetts Supreme Judicial Court ("SJC") affirmed his convictions and the denial of his motion for a new trial in an opinion dated September 15, 2009.  Commonwealth v. Avila, 454 Mass. 744, 912 N.E.2d 1014 (2009).  In his habeas petition, Avila raised nine grounds for relief. The Respondent opposes the petition on the grounds that some of the claims contain issues of state evidentiary law which are not cognizable on habeas review, some claims are procedurally defaulted or unexhausted, and the state court's decision on the remaining claims was not contrary to or an unreasonable application of clearly established Supreme

Court case law.  The Petitioner, who is represented by counsel, has withdrawn Ground 8 as it was not raised as a federal issue in the state courts, but disagrees with the Respondent's other arguments and continues to pursue his other grounds for relief.

After careful consideration of the record, and for the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the habeas petition be DENIED.

## II.  **STATEMENT OF FACTS**[1]

### **The Underlying Crime**

On February 25, 2004, an Essex County grand jury returned indictments charging Avila with first degree murder and unlawful possession of a firearm arising out of the death of Jose Crespo on November 6, 2003.  SA 5, 77-79.  He was convicted of murder in the first degree on the theories of premeditation and extreme atrocity or cruelty and possession of a firearm without a license.  See Avila, 454 Mass. at 745, 912 N.E.2d at 1017.  As described by the SJC, see id. at 746-50, 912 N.E.2d at 1018-21, the facts which the jury could have found are as follows.[2]

_____

[1]  The Respondent has filed a Supplemental Answer ("SA") containing the record below as Docket No. 8.

[2]  The underlying facts as found by the state courts are entitled to a presumption of validity under 28 U.S.C. § 2254(e)(1).  See Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002); Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001).  See also Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2001) (without clear and convincing evidence to the contrary, a presumption of correctness applies to the factual findings of both the appellate and trial courts).

In the fall of 2003, Avila was good friends with Pedro Cruz, and the two lived two blocks apart in Lawrence, Massachusetts.  Avila had access to Cruz's apartment even when Cruz was not there.  Cruz drove a white Chevrolet Corsica that Avila had allowed him to register in Avila's name to obtain a lower insurance rate.  Cruz sold drugs, and Avila loaned him money to be used for the purchase of cocaine.  At some point in October, 2003, Avila introduced Cruz to the victim, Jose Crespo, who Avila knew as "Xavier."  The victim stayed with Cruz for a few days, and also rented a room or apartment from Felipa Marquez, a customer of Cruz.  The victim also helped Cruz in his drug trafficking business.

Some days after Cruz met the victim, Cruz went to New York.  Avila called him there and reported that $1,000 of cocaine was missing from Cruz's closet.  Both Cruz and Avila suspected Crespo of the theft.  When Cruz mentioned the theft to the victim, Crespo responded, "Oh well, you know, things happen."  Id. at 746, 912 N.E.2d at 1018.

On November 5, 2003, the day before the murder, Avila called Cruz and told him that while he was at Cruz's apartment, two men had attacked him with a knife.  When Cruz arrived home from work he found the apartment "torn apart"; there was "blood all over"; and Avila had cuts and bruises on his hands and back.  Id. at 747, 912 N.E.2d at 1018.  Avila told Cruz that he had chased the two men out of the apartment and had seen them get into a car driven by a third man, who he believed was Crespo.  Avila put a baseball bat in Cruz's car, and Avila and Cruz drove around looking for the victim, but

were unsuccessful.  Avila told Cruz that he would like Cruz's help to find the victim the next day.

The next day, Avila called Cruz and again asked for his help in looking for the victim, and indicated that he wanted to determine if the victim was the person who had attacked him.  Cruz called his employer and told him he was not coming to work.  Then Cruz received a call from the victim, who asked to set up a drug buy, which was promptly arranged.  Crespo arrived at the meeting place with two customers, Miguel Perez and Ludim Pagan, got into Cruz's car where Crespo paid for and Cruz provided the drugs, and then delivered the drugs to the customers in their car.  Crespo then drove away with Cruz, who had previously advised Avila that he was going to meet with Crespo.

While Cruz and Crespo were driving, Avila called Cruz and made arrangements to meet.  At a location on Brook Street, Cruz pulled over and Avila pulled over behind him.  Cruz told Crespo that Avila wanted to talk to him, and the victim got out of Cruz's car and walked toward Avila's car.  Cruz got out of his car and stayed near his car, but close enough to Avila and the victim to hear them talking.  Avila asked the victim if he had stolen money from him and whether he had been part of the attack on him.  Although Crespo denied any involvement, Avila pulled a gun out of a bag, and shot him.  "At the time of the first shot, the defendant and the victim were approximately five to six feet apart, facing one another.  The victim fell to the ground and then struggled to get up.  The defendant extended his arm out toward the victim and shot him a second time."  Id. at 748, 912 N.E.2d at 1019.

Cruz drove away in his car (which was registered to Avila), and passed a witness, Harry Milliken, who called in and reported the license plate to police.  Id.  According to Milliken, and Victor Ayala, another witness who saw a man with a gun, the shooter was not the driver of the white car; rather, the shooter left in another car.  See id. at 758, 912 N.E.2d at 1026; SA 152-53.

Some time later, Avila called Cruz and made arrangements to meet him in Methuen.  Avila arrived in a different car, and told Cruz that the police had already been to his house, having traced the license plate Milliken had reported, and that Cruz should tell the police that Avila had shot the victim because he was "scared for his life."  Avila, 454 Mass. 748, 912 N.E.2d 1019.  Cruz went to the police station later that day where he made the first of what was to be three different statements.

### The Investigation

In his first statement, Cruz said he had driven the victim to the scene of the shooting in the white Chevrolet Corsica, and claimed that the shooter was an unknown black man who had driven there in a black Honda Prelude.  This statement made no mention of Avila. The police were not convinced, and asked Cruz to take a lie detector test.  He agreed, and then "failed" the test.  Id. at 749, 912 N.E.2d at 1020.

The police subpoenaed the telephone records for Cruz's and Avila's cell phones.  As a result of a lead developed from these records, the police interviewed Marquez, the victim's landlord.  She reported that she had received a call from a Spanish-speaking male the night before the shooting warning her to not "let [the victim] in anymore" because "a

very dangerous person is looking for [him] to kill him, because they gave him some material that he didn't pay for."  Marquez used a feature on her phone to identify the caller's number, and it was the defendant's cell phone number.  Id.

On November 20, 2003, the police interviewed Cruz at his workplace and at the station.  He provided additional information, but did not name Avila.  Later that night, he called the lead police investigator, Lawrence Detective Michael Laird, and told him that Avila was the shooter.  The next day, November 21, 2003, Cruz went to the police station, met with Detective Laird and State Trooper Matthew Gravini, identified Avila as the shooter, and provided a statement consistent with his trial testimony (which forms the basis for most of the SJC's recitation of facts).  Avila was arrested on December 18, 2003 in New York City.  He denied any involvement in the shooting, and denied knowing the victim.  Id. at 750, 912 N.E.2d at 1020.

Ballistics tests established that the two spent shell casings recovered at the scene of the shooting, as well as a bullet found embedded in the victim's clothing and a bullet recovered from the victim's body during the autopsy, were all from the same weapon.  An examination of the victim's clothing established that a weapon had been discharged while in contact with the back of his jacket.  Id. at 750, 912 N.E.2d at 1020-21.

## Procedural Background

Avila was indicted by an Essex County grand jury on February 25, 2004, and charged with first degree murder and unlawful possession of a firearm.  SA 5, 77-80.  Prior to trial he moved to suppress statements made to the police.  SA 6.  The motion was

denied.  Id.  On January 26, 2006, following a jury trial, Whitehead, J. presiding, Avila was

convicted of both counts.  SA 7.

In his direct appeal to the SJC, Avila raised the following issues:

> 1.  Whether the judge erred by allowing the prosecutor to elicit from
> the lead investigators their opinion of the defendant's guilt?
>
> 2.  Whether admission of Trooper Gravini's written version of Pedro
> Cruz' statements was reversible error?
>
> 3.  Whether the prosecution proved its theory that the shooting of
> Crespo was an "execution" committed with premeditation and extreme
> atrocity and cruelty, by eliciting facts and opinions from the medical
> examiner and the ballistician that were inadmissible?
>
> 4.  Whether the judge erred by admitting a statement purportedly made
> by the defendant where its probative value was outweighed by its
> prejudice to the defense?
>
> 5.  Whether the circumstances of this case dictated that the judge
> instruct the jury on the Bowden defense?

SA 19.  The SJC denied the appeal in an opinion dated September 15, 2009.  On May 4,

2010, Avila filed a pro se motion for a new trial, alleging that the trial court had erred by

failing to instruct the jury of the need to find an "unlawful" killing.  SA 8, 269.  The motion

was denied the next day on the grounds that the issue raised could and should have been

raised on the direct appeal.  SA 294.  Avila filed a motion to amend the new trial motion,

which was denied on May 12, 2010.  SA 8.  On July 2, 2010, the SJC denied Avila leave to

appeal.  SA 8-9.  This timely habeas petition was filed on October 18, 2010.

**Issues Raised in the Habeas Petition**

Avila's habeas petition sets forth nine grounds for relief.  As noted above, number 8 has been withdrawn as unexhausted.  The nine counts are as follows:

> 1.  The trial court improperly instructed the jury, omitting the requirement that a killing must be "unlawful" in order to convict the petitioner of murder, depriving the Petitioner of a fair trial and due process of law;

> 2.  The trial court failed to instruct the jury on the Petitioner's principal defense, the inadequate police investigation herein;

> 3.  The trial court erroneously omitted language on self-defense and provocation as mitigating factors preventing a finding of malice in its charge to the jury;

> 4.  Trial counsel provided ineffective assistance in failing to challenge ballistics evidence and jury instructions;

> 5.  The trial court erroneously allowed the Commonwealth to elicit opinion evidence regarding Petitioner's guilt;

> 6.  The trial court erroneously admitted the written version of Pedro Cruz's three statements to police;

> 7.  The trial court improperly allowed expert evidence to be presented by the medical examiner who was not the examiner who actually conducted the autopsy.

> 8.  [WITHDRAWN] The trial court erred by admitting prejudicial statements by the Petitioner into evidence; and

> 9.  The cumulative effect of all the errors created a substantial risk of a miscarriage of justice.

Additional facts will be provided below where appropriate.

## III.  ANALYSIS

### A.  Standard of Review

The standard of review to be applied to Avila's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The standard allows a federal court to grant a writ of habeas corpus only if the underlying state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In undertaking this analysis, "a habeas court must determine what arguments or theories supported the state court's decision, and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Wetzel v. Lambert, 132 S. Ct. 1195, 1198, 182 L. Ed. 2d 35 (2012) (quoting Harrington v. Richter, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) (internal punctuation omitted)).  Moreover, "[i]n this context, 'clearly established law' signifies 'the holdings, as opposed to the dicta'" of the Supreme Court decisions.  Howes v. Fields, 132 S. Ct. 1181, 1187, 182 L. Ed. 2d 17 (2012) (quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000)).

A writ of habeas corpus is only appropriate "under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts."  Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843,

1850, 152 L. Ed. 2d 914 (2002).  By contrast, relief is proper "under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [the Supreme Court] decisions but unreasonably applies it to the facts of the particular case."  Id.  An unreasonable application is more than just error, entailing "some increment of incorrectness beyond error[.]"  McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (internal quotation and citation omitted); accord Bell, 535 U.S. at 694, 122 S. Ct. at 1850.  The "increment of incorrectness beyond error" "must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court."  Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011) (quoting McCambridge, 303 F.3d at 36).

With respect to factual findings, "the AEDPA sets out a separate and exacting standard applicable to review of a state court's factual findings."  Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007) (citing, inter alia, 28 U.S.C. § 2254(e)(1)).  Thus, there is a presumption that factual findings by the state court are correct, and the habeas court must defer to such findings.  Sanna, 265 F.3d at 10.  "[A] habeas petitioner can rebut this presumption by adducing 'clear and convincing evidence'" that convinces the habeas court "that the underlying state court's adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'  [28 U.S.C.] § 2254(d)(2)."  Id.; see also Teti v. Bender, 507 F.3d 50, 57 (1st Cir. 2007) (petitioner bears the burden of overcoming the presumption of correctness by providing 'clear and convincing evidence' of the error).

Finally, a writ of habeas corpus does not lie for errors of state law.  "Federal habeas is not an ordinary error-correcting writ."  <u>Nadworny v. Fair</u>, 872 F.2d 1093, 1096 (1st Cir. 1989).  Rather, it "exists to rescue those in custody from the failure to apply federal rights, correctly or at all."  <u>Id.</u>  Thus, habeas relief is only available if a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States"; it "does not lie for errors of state law."  <u>Swarthout v. Cooke</u>, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) (internal quotations and citations omitted).

Applying these principles to the instant case compels the conclusion that the petition for a writ of habeas corpus should be denied.

## B.    <u>Vouching for Cruz's Credibility</u>

Cruz was a critical witness, and was the only witness who identified Avila as the individual who shot and killed the victim.  Avila argues that the Government improperly vouched for Cruz's credibility by allowing the two lead police officers, Detective Laird and Trooper Gravini, testify that they relied on Cruz's statements in conducting their investigation, thereby repeating and affirming Cruz's statements, and by allowing into evidence all three written statements that Cruz had made.[3]  The government argues, <u>inter</u> <u>alia</u>, that these rulings were based on state law and that, therefore, the issue is not appropriate for habeas review.  For the reasons detailed herein, this court finds that Avila is not entitled to habeas relief on these grounds.

---

[3] These are Grounds 5 and 6 of the habeas petition.

1.     **The Relevant Facts**

As the SJC explained, Avila's principal defense was a so-called "*Bowden* defense,"

which "refers to a defense built around the proposition that an inadequate police investiga-

tion may raise serious questions about whether the police and the Commonwealth have

charged and are prosecuting the proper perpetrator, and thus may give rise to reasonable

doubt about the defendant's guilt."  Avila, 454 Mass. at 745 n.1, 912 N.E.2d at 1017 n.1

(quoting Commonwealth v. Bowden, 379 Mass. 472, 485-86, 399 N.E.2d 482, 491 (1980)).

Specifically, as the SJC held:

> [t]he thrust of the defendant's *Bowden* defense was that the police had
> obtained the defendant's name (through the car registration plate
> number reported by Milliken) on the day of the murder, and had
> thereafter focused exclusively on the defendant in the investigation.
> As a result, the defense contended, the police failed to pursue strong
> leads pointing to other suspects and were too easily led astray by Cruz
> — an individual the defense characterized as far from truthful,
> probably involved in the murder himself, and therefore motivated to
> turn the investigative spotlight on the defendant.  This was the theme
> of defense counsel's opening statement, his closing argument, and
> substantial parts of his cross-examination of the two lead police
> investigators, Laird and Gravini.

Avila, 454 Mass. at 751, 399 N.E.2d at 1021.  In light of the *Bowden* defense, the trial

judge allowed otherwise impermissible testimony from the police officers for the limited

purpose of providing the jury with information about what the police knew, in order for the

jury to evaluate their investigation.  He also allowed into evidence Cruz's written state-

ments which would otherwise be impermissible hearsay.  As detailed more fully below, the

SJC ruled that the admission of the oral testimony from the police was proper, and, while it

was an error for the trial court to let in written copies of Cruz's statements, it was not prejudicial. Id. at 754-59, 912 N.E.2d at 1023-29.

Specifically, but without limitation, defense counsel raised an issue during his cross-examination of Laird to the effect that the police had failed to fully investigate two other potential suspects. Id. at 751, 912 N.E.2d at 1021. On redirect, the prosecutor then asked Laird when and why the police investigation began to focus on Avila. Id. In response, Laird testified that the police began focusing on Avila on November 21, 2003, when Cruz made a statement that the defendant was the shooter, and further "testified in substance that the police focused on the defendant on November 21, 2003, both because Cruz's account of the shooting incident resonated with accounts of the incident given to police by other witnesses and because Cruz's account of telephone calls between him and the defendant around the time of the shooting were consistent with the cellular telephone records obtained and examined by the police." Id. at 751-52, 912 N.E.2d at 1021-22. Gravini, who had taken verbatim notes of what Cruz had said in his three statements to police (but not his questions), was allowed to testify, in response to specific questions, about what Cruz had said to the police in the statements. Id. at 752, 912 N.E.2d at 1022. In addition, the written statements were admitted principally because they were relevant to the *Bowden* defense. Id. At various times during the testimony of Laird and Gravini, the trial judge instructed the jury that the evidence "was not admitted for the truth of the matter, but for the sole purpose of allowing the jury to base their evaluation of the police investigation on an understanding of what the police knew." Id. at 751, 752, 912 N.E.2d at 1021, 1022. In

addition, the judge gave a lengthy instruction to the jury that the evidence was not being

admitted substantively.  Specifically, as the judge instructed:

> Now in this case, you have a number of statements, both testified to
> orally by Mr. Cruz and that were apparently made in writing and
> signed by Mr. Cruz concerning the events of November sixth.  Those
> were offered for a couple of purposes: one, to impeach the credibility
> of his in-court testimony to the extent that they may have been incon-
> sistent with his in-court testimony and, two, so that you could see how
> his statement evolved over time, and use the information that the
> police had from those statements to assess the propriety of the actions
> which they took as they underwent their investigation.  But the one
> thing you cannot use them as substantive evidence....   It is only Mr.
> Cruz's in-court statements as to facts, which may be considered as
> substantive evidence of whether those facts occurred.

Id. at 753, 912 N.E.2d at 1022-23.

## The SJC Decision

The SJC addressed the defendant's argument "that under the guise of allowing the

Commonwealth to respond to his *Bowden* defense, the judge erroneously allowed the

prosecutor to elicit impermissible opinion testimony from both lead investigators about

their views of the defendant's guilt, as well as about the credibility of the Commonwealth's

primary witness, Pedro Cruz[.]"  Id. at 754, 912 N.E.2d at 1023.  The SJC recognized that

"determining precisely what evidence may be admitted to rebut a *Bowden* defense is a

delicate and difficult task, given the fine line between permissibly allowing a police officer

to explain investigative decisions (e.g., why certain leads were not followed, why certain

tests were not conducted, why the police took their investigation in the direction that the

police did) and impermissibly allowing a police officer to offer an opinion about the guilt

of the defendant, the credibility of a witness for the Commonwealth or the strength of the

Commonwealth's case." Id. at 753-54, 912 N.E.2d at 1014.  The SJC ruled that the oral

testimony from the police did not cross that line and was properly admitted to explain "why

the investigators chose the particular investigative path they did, including the reasons they

ultimately accepted and acted on Cruz's information that the defendant was the person who

shot the victim." Id. at 755, 912 N.E.2d at 1024.  The Court ruled that Laird's testimony

was proper because he answered questions about "the reason for each specific omission or

decision" and did not respond "to a general question with a comprehensive account of the

evidence against the defendant." Id. at 755, 912 N.E.2d at 1024 (quotations omitted).

Gravini testified in detail about the contents of the three statements made by Cruz to the

police.  Such testimony was held to be proper because the Commonwealth had the right,

"in the face of the defendant's attack on the police decision to accept and act on Cruz's

ultimate statement, to trace and explain the investigators' response to Cruz's statements."

Id.  In light of the court's repeated limiting instructions, the SJC concluded that there was

"little risk that the jury took Gravini's challenged testimony about Cruz's statements as a

confirmatory opinion of the defendant's guilt." Id. at 755-56, 912 N.E.2d at 1024.

    With respect to the written notes of Cruz's statements, however, the SJC ruled that

their admission was an abuse of discretion because "there was a real risk that the jurors

might substitute the written notes for their collective memory of Cruz's testimony[,]" and,

given the repetitive nature of the evidence, might "treat the oral and written evidence

concerning Cruz's statements as a form of credibility-enhancing prior consistent statement

in relation to Cruz's trial testimony." Id. at 757, 912 N.E.2d at 1025.  Nevertheless, the

SJC concluded that any error was not prejudicial.  As the Court explained:

> While Cruz was a crucial witness for the Commonwealth – the only
> person who identified the defendant as the man who shot and killed
> the victim – **Cruz himself was not a suspect for this role: the
> undisputed testimony of both disinterested eye-witnesses, Milliken
> and Ayala, was that the driver of the white Corsica, i.e., Cruz, was
> *not* the shooter**.  Moreover, Cruz's three statements assisted the
> defense in one very significant way, because they necessarily reflected
> that Cruz had lied to the police repeatedly, as he was forced to
> acknowledge in his testimony.  Further, while not dispositive, ...
> relevant to this inquiry are the facts that (1) the jury had been
> introduced to virtually all the contents of Cruz's statements through
> the testimony of Cruz, Laird, and Gravini–so that the notes were
> themselves cumulative of what had already been provided at trial in
> connection with the *Bowden* defense and its rebuttal; and (2) the judge
> repeatedly instructed the jury that, in accordance with the *Bowden*
> defense, they could not accept any of the evidence of Cruz's
> statements as substantive proof of what Cruz stated, that is, for its
> truth.  Finally, even though Cruz was a critical witness, the
> independently obtained evidence presented at trial–for example, the
> cellular telephone records of the defendant, Cruz, and certain others
> that the police had subpoenaed; the testimony of Pagan and Perez,
> who purchased cocaine from the victim shortly before he was killed;
> and the testimony of Milliken and Ayala, eyewitnesses at the scene of
> the shooting–offered repeated corroboration of the chronology of
> events that Cruz laid out and established a very strong case against the
> defendant.  "We are confident that, if the error had not been made, the
> jury verdict would have been the same." [*Commonwealth v. Lodge*,
> 431 Mass. 461, 468, 727 N.E.2d 1194 (2000)].

Avila, 454 Mass. 758-59, 912 N.E.2d 1026-27 (emphasis added).

### 2.   Analysis

Avila contends that "improper vouching by the government for a witness' credibility

is a violation of petitioner's due process rights."  Pet. Mem. (Docket No. 14) at 6 (citing

-16-

Olszewski v. Spencer, 466 F.3d 47, 60 (1st Cir. 2006)).  Moreover, according to Avila, "[t]he SJC's determination 'that there is little risk that the jury took Gravini's challenged testimony as a confirmatory opinion of the [petitioner's] guilt' was an unreasonable determination of the facts of the case[.]"  Pet. Mem. at 7.  Avila further argues that the SJC's decision that the admission of Cruz's written statements was harmless error was unreasonable because there was no credible evidence that Cruz, himself, was not the shooter.  Avila also contends, without citation, that their admission violated his Fifth and Sixth Amendment rights to a fair trial and that the SJC's determination that any error was harmless "was an unreasonable determination of the facts."  Id.  Moreover, Avila argues, "where these statements were not offered until after Cruz had testified, defense counsel was unable to cross-examine Cruz regarding them, denying petitioner his Sixth Amendment confrontation clause rights as well."  Id.

The Respondent raises numerous objections to this claim.  First, he contends that the SJC's decision was a matter of state evidentiary law and that Avila otherwise fails to establish that the decision was contrary to or an unreasonable application of Supreme Court law.  Resp. Mem. (Docket No. 16) at 14.  He also contends that none of Avila's constitutional arguments concerning the admissibility of the written statements were exhausted below.  Id. at 15.  Finally, the Respondent argues, the objections to the admissibility of the written statements "fail to raise issues of constitutional dimension."  Id. at 17.  For the reasons detailed herein, this court agrees that Avila has not established that he is entitled to habeas relief.

a.     **Issues of State Law**

As the Respondent correctly asserts, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Waddington v. Sarausad, 555 U.S. 179, 192 n.5, 129 S. Ct. 823, 832 n.5 (2009) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)).  It is undisputed that the SJC decided the issue of the admissibility of the police officers' testimony and Cruz's written statements on the basis of state law.  See Petitioner's Reply Memorandum in Support of Petition for Habeas Corpus Relief (Docket No. 17) ("Pet. Reply") at 1-2 (acknowledging that the SJC treated the issue raised as a question of state evidentiary law).  Nevertheless, as Avila asserts, he had raised a claim that the effect of the trial judge's rulings regarding the admissibility of the police officers' oral testimony was to remove the evaluation of credibility from "the exclusive province of the trier of fact," thereby violating "the defendant's rights under the Sixth Amendment and art. 12 of the Declaration of Rights to be tried by a jury."  SA 48 (citing Commonwealth v. McDuffee, 379 Mass. 353, 363-364 (1979) (where there are disputed facts, "the Sixth Amendment to the United States Constitution Guarantees an accused the right to have a jury decide the question.  A judge may not invade the province of the jury by undertaking to decide on the weight or effect of evidence, or by refusing to submit to their consideration any question of fact, material to the issues which may be in dispute.") (internal quotation and citation omitted)).  This is sufficient to raise a claim of a constitutional violation which is appropriate for habeas review.  See Hamm v. Latessa, 72 F.3d 947, 954 (1st Cir. 1995) ("a federal habeas court

will not disturb the state courts' construction or application of state law unless it can be shown that such construction or application offends the Constitution or some (applicable) federal statute.").

With respect to Avila's present challenge to the admissibility of Cruz's written statements, however, Avila did not argue any constitutional basis for his objection to the SJC, and the SJC did not decide the issue on the basis of any constitutional claim.  See SA 30-34; Avila, 454 Mass. 757-59, 912 N.E.2d at 1025-27.  Thus, his present claim that the admission of such documents violated his Fifth and Sixth Amendment rights to a fair trial and his Sixth Amendment confrontation clause rights were not presented to the state court.  Consequently, these claims are unexhausted and not appropriate for habeas review.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thus giving the state the first 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"  Josselyn v. Dennehy, 475 F.3d 1, 2 (1st Cir. 2007) (quoting Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (per curiam) (internal citations omitted)).  In order to exhaust a claim, it must be "fairly presented" to the state's highest court which, in this case, is the SJC.  See Josselyn, 475 F.3d at 3, and cases cited; Adelson v. DiPaola, 131 F.3d 259, 263 (1st Cir. 1997).

"In order to exhaust a claim, the petitioner must 'present the federal claim fairly and recognizably' to the state courts, meaning that he 'must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted

to the existence of the federal question.'"  Clements v. Maloney, 485 F.3d 158, 162 (1st

Cir. 2007) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000) (additional

citations and internal quotations omitted)).  This means that the legal theories presented as

grounds for relief must be the same in both the state and federal courts.  Gagne v. Fair, 835

F.2d 6, 7 (1st Cir. 1987), and cases cited.  "It is not enough that the same facts underlay the

claims."  Id.  See also Baldwin v. Reese, 541 U.S. 27, 31-32, 124 S. Ct. 1347, 1351, 158 L.

Ed. 2d 64 (2004).  A "petitioner's failure to present his federal constitutional claim to the

state courts is ordinarily fatal to the prosecution of a federal habeas claim."  Coningford v.

Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011).  Therefore, Avila's present constitutional

challenges to the admission of Cruz's written statements are not properly before this court,

as the matter was decided solely on the basis of state law.

### b.      Claim of Constitutional Violation

Regardless whether this court's analysis is limited to the admissibility of the police

officers' testimony, or also includes the admission of Cruz's written statements, the result

is the same.  Avila has failed to establish a violation of his constitutional rights warranting

habeas relief.

"To be sure, a misbegotten evidentiary ruling that results in a fundamentally unfair

trial may violate due process and, thus, ground federal relief.  But to trigger such relief, the

state court's application of state law must be 'so arbitrary or capricious as to constitute an

independent due process . . . violation.'  Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct.

3092, 3102, 111 L. Ed. 2d 606 (1990).  The Supreme Court has 'defined the category of

infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990).  The state court's decision in the instant case falls well outside these narrow confines." Coningford, 640 F.3d at 484 (additional internal citations omitted).  See also Olszewski, 466 FF.3d at 460-61 (prosecutor's improper personal vouching of defendant's guilt may constitute a due process violation).  Avila has not met his burden of proving that the state court decision was an unreasonable application of Supreme Court law.

First of all, the Petitioner has not identified any Supreme Court law relating to the scope of admissible evidence in response to a challenge to police investigatory decisions. As a general matter, "[a] threshold determination that no holding of the Supreme Court required application to the factual context presented by the petitioner's claim is dispositive in the habeas analysis." Brown v. Ruane, 630 F.3d 62, 68 (1st Cir. 2011).

Moreover, by couching his objection to the SJC decision as being an "unreasonable determination of the facts," Avila fares no better.  The SJC was cognizant of the risk that the jury would "interpret the officers' recitation of the facts as expressing their opinion of petitioner's guilt" or that the jury would take "Gravini's challenged testimony as a confirmatory opinion of the [petitioner's] guilt."  Pet. Mem. at 7.  Nevertheless, in light of the judge's repeated instructions limiting the use of the testimony, and the fact that the officers were not given free rein to review all the evidence against the defendant but, rather, were required to respond to specific questions about the factors that led the police to focus on the defendant when they did, the SJC concluded that the admission of the officers'

testimony did not "cross the line between a permissible account of the police investigators' rationale for pursuing a certain suspect or investigatory direction, and an impermissible expression of opinion of the defendant's guilt or implicit comment on a witnesses's credibility." Avila, 454 Mass. at 756 n.12, 912 N.E.2d at 1024 n.12.  Such a conclusion is not unreasonable either as a matter of federal law or as a matter of fact.

Even assuming, arguendo, that there was error in admitting the testimony, "[t]o be a constitutional violation, a state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." Abrante v. St. Amand, 595 F.3d 11, 19 (1st Cir. 2010) (internal quotation and citation omitted).  No such situation was created here.  As the SJC held, despite the fact that Cruz was a critical witness, there was a significant amount of independently obtained and corroborative evidence at trial that "established a very strong case against the defendant."  See Avila, 454 Mass. at 758-59, 912 N.E.2d 1026.

Finally, Avila challenges the SJC's conclusion that any error was harmless on the grounds that the Court was mistaken in finding that Cruz himself was not a suspect.  The SJC relied on the undisputed testimony of Milliken and Ayala "that the driver of the white Corsica, i.e. Cruz, was *not* the shooter." Pet. Mem. at 7-8.  However, Avila argues, "[w]hile Milliken and Ayala identify the driver of the white Corsica as not the shooter, *only Cruz identifies himself as the driver of that car*." Id. at 8.  This claim is not supported by the record.  Both of the drug customers, Perez and Pagan, also had the opportunity to see Cruz driving the white car when he sold drugs to the victim shortly before the shooting.

See Avila, 454 Mass. at 747 n.2, 912 N.E.2d 1019 n.2.  The SJC's determination that any error was harmless was not unreasonable as a matter of law or fact.  Moreover, even assuming the Court's assessment was in error, it did not rise to the level of a constitutional violation.

For these reasons, Avila is not entitled to habeas relief on the basis of Grounds 5 and 6 of his Petition.

### C.   Jury Instructions

In Grounds 1, 2 and 3 of his habeas petition, Avila argues that the trial judge erroneously instructed the jury by (1) omitting the requirement that a murder must be an "unlawful" killing, (2) by omitting a Bowden instruction on the failure of police to properly investigate, and (3) by failing to instruct on self-defense and provocation as defenses to murder.  Avila contends that these alleged errors "violated the requirement that the Commonwealth prove every element of its case beyond a reasonable doubt, as required by the due process clause and the Supreme Court's decision in In re Winship, 397 U.S. 358 (1970)."  Pet. Mem. at 8.  The Respondent argues that any challenge on a failure to charge on an "unlawful" killing, the Bowden defense and self-defense are procedurally defaulted, and that the defendant was not entitled to an instruction on reasonable provocation.  In response, Avila argues that the errors in the jury instructions resulted in "a fundamental miscarriage of justice" and "the conviction of an innocent man," thereby excusing the procedural default.  Pet. Reply at 2.  For the reasons detailed herein, this court concludes

that the defendant has failed to establish that he is entitled to habeas relief on these grounds.

### 1.  Facts Relating to the Jury Charge

It is undisputed that the trial judge "did not use the term 'unlawful' in instructing the jury that they must find (1) the defendant himself killed the victim, and (2) did so with the actual, subjective intent to cause the victim's death."  Avila, 454 Mass. at 768, 912 N.E.2d at 1033.  However, as the SJC found, the defendant did not object at trial.  Therefore, the SJC reviewed the objection under a miscarriage of justice standard.  Id.  In rejecting Avila's objection, the SJC ruled as follows:

> An unlawful killing is a killing done "without legal excuse or justification, such as accident, self-defense, or defense of another." *Commonwealth v. Medina*, 332 Mass. 800, 804-805 n.5 (2000).  At trial, there was no evidence suggesting that the killing of the victim was excused or justified as an accident or the proper exercise of self-defense.  While our Model Jury Instructions on Homicide (1999) speak of "unlawful killing" as one of the elements of first degree murder, the defendant did not object to the judge's failure to explain this element in his instructions to the jury.  In light of the absence of any evidence to indicate that the victim's killing was anything other than unlawful, the judge's failure specifically to instruct the jury that they must find the Commonwealth had proved an "unlawful killing," if it was error, did not create a substantial likelihood of a miscarriage of justice.

Id.

With respect to the Bowden instruction, the SJC did not rely on any failure to object at trial, but, rather, found no abuse of discretion in the trial judge's decision not to give such an instruction.  The SJC rejected Avila's contention "that the judge's failure to give

such an instruction impermissibly took the issue of a potentially faulty police investigation away from the jury."  Id. at 767, 912 N.E.2d at 1032.  As the Court ruled:

> The *Bowden* case makes clear that a judge may not remove the issue of a biased or faulty police investigation from the jury, see [*Bowden*, 379 Mass. at 486, 399 N.E.2d at 482], but that is not what happened here. The judge carefully and repeatedly instructed the jury that certain pieces of evidence, including Cruz's statements, were being admitted for the sole purpose of allowing the jury to evaluate whether the police investigation was biased or faulty.  In *Commonwealth v. Williams*, 439 Mass. 678, 687, 790 N.E.2d 662 (2003), we indicated that "*Bowden's only* requirement" is that "the judge ... not remove the inadequacy of the police investigation from consideration by the jury" and that "the giving of [a *Bowden*] instruction is never required" (emphasis added). The judge here acted within his discretion to decline a *Bowden* instruction.

Id. at 767, 912 N.E.2d at 1032-33.

With respect to the trial judge's failure to instruct on self-defense as a complete defense to criminal liability, Avila did not object at trial, and the SJC reviewed his objection under a miscarriage of justice standard, finding that the omission of this instruction "did not result in a substantial likelihood of a miscarriage of justice."  Id. at 768-69, 912 N.E.2d at 1033.  The SJC also ruled:

> Further, no self-defense instruction was warranted because "[t]he right to self-defense does not arise unless," inter alia, "the defendant took every opportunity to avoid combat."  *Commonwealth v. Berry*, 431 Mass. 326, 335, 727 N.E.2d 517 (2000).  In this case, the defendant arranged to meet the victim on a public street and arrived there in his own car.  As the Commonwealth argues, quoting *Commonwealth v. Pasteur*, 66 Mass. App. Ct. 812, 820, 850 N.E.2d 1118 (2006), where "there is no evidence that the principal was not able to walk away, there is no basis for a claim of self-defense."

Id. at 769, 912 N.E.2d at 1033.

Finally, the SJC rejected the defendant's claim that a failure to instruct on provocation was in error.  As the SJC held:

> The judge did not err in declining to instruct the jury on reasonable provocation manslaughter because the victim's conduct toward the defendant did not rise to the level of provocation.  For such an instruction to be appropriate, "[t]here must be evidence that would warrant a reasonable doubt that something happened which would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant." *Commonwealth v. Walden*, 380 Mass. 724, 728, 405 N.E.2d 939 (1980).  See *Commonwealth v. Bertrand*, 385 Mass. 356, 363, 432 N.E.2d 78 (1982).  There was no such evidence here.

Id. at 768, 912 N.E.2d at 1033.

## 2.    Analysis

### Procedural Default

Avila's objections to the omission of the word "unlawful" and to the failure to give a self-defense instruction are procedurally defaulted.  "Federal habeas relief of a particular claim is precluded in circumstances in which a state prisoner has defaulted on that claim in state court by virtue of an independent and adequate state procedural rule."  Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010) (citing Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).  It is well established "that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in

its courts." Id.  The fact that the SJC engaged in a "discretionary miscarriage-of-justice

review does not amount to a waiver of the state's contemporaneous objection rule."  Id.

Where, as here, claims are procedurally defaulted, they can only be reviewed in

connection with this habeas petition if the "petitioner shows either cause for the default and

prejudice from the claimed violation of federal law, or that a fundamental miscarriage of

justice will result if the claim is not considered." Gunter v. Maloney, 291 F.3d 74, 78 (1st

Cir. 2002).[4]  "In the habeas context, cause is a term of art.  To excuse a procedural default

a petitioner's cause must relate to an objective factor, external to the defense, that thwarted

(or at least substantially obstructed) the efforts of the defendant or his counsel to obey the

state's procedural rule.  Mere attorney error, not amounting to ineffective assistance in a

constitutionally significant sense, is insufficient to constitute cause." Burks v. Dubois, 55

F.3d 712, 716-17 (1st Cir. 1995) (internal citations omitted).  Here there was no impedi-

ment precluding counsel from objecting to the challenged statements.  Therefore, there was

no "cause."[5]  Similarly, Avila "cannot meet the high burden of showing actual prejudice.

To scale this wall, a petitioner must demonstrate 'not merely that the errors at . . . trial

---

[4]  The doctrine of procedural default arises out of "the long-standing rule that federal courts do not review state court decisions which rest on 'independent and adequate state ground[s].'  Such independent and adequate state grounds exist where 'the state court declined to hear [the federal claims] because the prisoner failed to meet a state procedural requirement.'  In such a case, '[c]onsiderations of comity and federalism bar the federal court's review.'" Simpson v. Matesanz, 175 F.3d 200, 205-06 (1st Cir. 1999) (internal citations and punctuation omitted), cert. denied, 528 U.S. 1082, 120 S. Ct. 803, 145 L. Ed. 2d 677 (2000).

[5]  Since Avila does not argue that ineffective assistance of counsel was the cause of his procedural default, that issue will not be discussed at this time.  As detailed infra, Avila's ineffective assistance of counsel claim is without merit.

created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" <u>Ortiz v. Dubois</u>, 19 F.3d 708, 714 (1st Cir. 1994) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982)).  The record does not support a finding of an error of constitutional dimensions.

Avila also cannot, alternatively, establish that a fundamental miscarriage of justice will occur if his challenges are not considered on the merits.  "It is clear that for habeas purposes the federal 'fundamental miscarriage of justice' standard means that petitioner must establish actual innocence."  <u>Simpson v. Matesanz</u>, 175 F.3d 200, 210 (1st Cir. 1999) (citing, <u>inter alia</u>, <u>Schlup v. Delo</u>, 513 U.S. 298, 321, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). The petitioner's burden in connection with a claim of innocence "is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt."  <u>House v. Bell</u>, 547 U.S. 518, 538, 126 S. Ct. 2064, 2077 (2006).  Review of a case in light of a claim of actual innocence occurs only in the "extraordinary case."  <u>Id.</u> at 536, 126 S. Ct. at 2076 (internal citation omitted).  "Reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" is necessary to mount an actual innocence claim.  <u>Id.</u> at 537, 126 S. Ct. at 2077 (quoting <u>Schlup</u>, 513 U.S. at 324, 115 S. Ct. 851, 865).

In the instant case, other than saying that he is actually innocent, Avila has not put

forth any argument or facts in support of his claim of innocence.  Therefore, the objections

to the jury charge for failure to instruct using the word "unlawful" or to give a self-defense

instruction remain procedurally defaulted.

## Bowden Instruction

The SJC's decision finding no error with the trial court's decision not to issue a

Bowden instruction was not contrary to or an unreasonable application of Supreme Court

law.  As the SJC concluded, the trial judge did not take the issue of a faulty police investi-

gation from the jury, rather the jury had been repeatedly instructed that evidence was being

admitted so that the jurors could evaluate the investigation.  Moreover, defense counsel had

argued this theory forcefully to the jury.  Avila has cited to no Supreme Court cases finding

that a Bowden-type instruction was constitutionally required to insure that Avila's convic-

tion rested "upon a jury determination that the defendant is guilty of every element of the

crime with which he is charged beyond a reasonable doubt."  United States v. Gaudin, 515

U.S. 506, 510, 115 S. Ct. 2310, 2313, 132 L. Ed. 2d 444 (1995).  Consequently, this claim

fails to state a basis for habeas relief.

## Provocation

Finally, the defendant has not established that the SJC decision that the facts did not

warrant an instruction on manslaughter provocation was contrary to or an unreasonable

application of Supreme Court law.  Avila argues that such an instruction was appropriate

based on Cruz's testimony about Crespo's movements prior to being shot, e.g., Crespo

looked like he was "about to either jump him or whatever." See Pet. Mem. at 10.  How-ever, the trial judge did give an instruction on excessive use of force in self-defense, which would be appropriate in light of this testimony under Massachusetts law.  See Avila, 454 Mass. at 768 n.27, 912 N.E.2d at 1033.  In fact, defense counsel at trial conceded that the evidence only supported an excessive force charge, and did not support a theory of man-slaughter based on reasonable provocation.  See SA 200 n.51.  Avila has not established that the SJC's decision, which was based on state law, either raised a constitutional issue or was contrary to or an unreasonable application of Supreme Court law.

For all these reasons, this court concludes that Avila has not established that he is entitled to habeas relief due to any errors in the jury instructions.

### D.      Testimony of the Medical Examiner

In Ground 7 of his Petition, Avila challenges the fact that the Medical Examiner who testified at trial, Dr. Mark Flomenbaum, was not the Medical Examiner who actually conducted the autopsy.  Nevertheless, according to Avila, "he was allowed to testify as to the results of the autopsy and his opinions of the cause of death, and to a certain extent as to the mechanics of the shooting, in contravention of petitioner's Sixth Amendment right to confrontation, as established by Melendez-Diaz v. Massachusetts, 577 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).  The SJC acknowledged that the admission of evidence regarding the findings of the autopsy violated petitioner's confrontation clause rights, Avila, 454 Mass. at 763, 912 N.E.2d at 1029, but concluded that error did not require reversal.  Id., 912 N.E.2d at 1030.  This was unreasonable." Pet. Mem. at 11 (footnote

omitted).  Respondent contends that this claim has been procedurally defaulted.  Avila

disputes that the SJC based its decision on the procedural default.  For the reasons detailed

herein, Avila has failed to state a claim for habeas relief.

### 1.    Facts Relating to the Expert Opinion

Dr. Mark Flomenbaum, the chief medical examiner for the Commonwealth, testified

at trial and "offered his opinions on direct examination that the 'cause of death' was 'the

gunshot wounds through the aorta and kidney' and the 'mechanism' of death was

'hemorrhage' or 'loss of blood.'  He also offered an opinion on how long it might have

taken the victim to die, and about whether the victim might have been conscious after each

shot was fired.  These opinions were based primarily on the autopsy report and an autopsy

diagram prepared by Dr. Philip[,]" a former medical examiner who did not testify at trial

and who was no longer employed by the Commonwealth.  Avila, 454 Mass. at 759-60, 912

N.E.2d at 1027.  Dr. Flomenbaum also testified, based on the autopsy report and diagram,

concerning the path of bullets and the existence of a "shored exit wound," which is created

when a bullet exits a body that is "shored up against" another surface.  Id. at 760, 912

N.E.2d at 1027.  The testimony of Dr. Flomenbaum was relevant to the Commonwealth's

claim that the murder was committed with extreme atrocity and cruelty.  See id. at 763, 912

N.E.2d at 1030.

Before the SJC the defendant conceded "that Dr. Flomenbaum's opinions on the

victim's cause of death, the mechanism of death, and how long it took the victim to die

were admissible."  Id. at 760, 912 N.E.2d at 1027 (internal punctuation omitted).  Never-

theless, Avila argued, Dr. Flomenbaum should not have been "permitted to recite Dr.

Philip's findings and conclusions on direct examination, or to support or 'buttress' his own

opinions by setting out the facts and observations stated by Dr. Philip." Id.  After review-

ing Massachusetts state law decisions, as well as the recent Melendez-Diaz decision, the

SJC concluded "that the judge correctly permitted Dr. Flomenbaum to offer his opinions

concerning issues related to the autopsy, but erred in allowing Dr. Flomenbaum to testify

on direct examination about the findings in Dr. Philip's autopsy report — both because

these findings were inadmissible hearsay and because they violated the confrontation

clause." Id. at 760-63, 912 N.E.2d at 1027-29.  As the Court went on to rule:

> We also conclude, however, that **this unpreserved error did not
> result in a substantial likelihood of a miscarriage of justice**.  ...
> Contrary to the assertions of the defendant, the testimony admitted in
> error was distinctly cumulative.  Other evidence independently
> supported the Commonwealth's contention that the victim fell to the
> ground following the first shot; and that the defendant extended his
> arm toward the victim, now lying face down on the ground, and shot
> him in the back at close range.

Id. at 763, 912 N.E.2d at 1030 (emphasis added) (internal citation and footnote omitted).

### 2.  Analysis

Avila contends that the SJC did not rely on the fact that he had not objected at trial

to the admission of this testimony but, rather, had reached the merits of his claim.  See Pet.

Mem. at 2-3.  Therefore, he argues, the procedural default rule should not apply.  See

Gunter v. Maloney, 291 F.3d 74, 80 (1st Cir. 2002), and cases cited (state court can waive

failure to object by reaching the merits of a federal claim presented to it).  Contrary to the

defendant's argument, however, it is clear from the SJC decision that the Court did rely on the fact that the defendant did not object at trial, and limited its review to a miscarriage of justice. Thus, the claim remains procedurally defaulted.

As detailed above, in light of this procedural default this habeas court can only review this claim if the petitioner establishes either cause for the default and prejudice, or that a fundamental miscarriage of justice will result if the claim is not considered. Avila has not established either an external cause for the failure to object, or prejudice caused by the admission of repetitive testimony. Similarly, in the absence of evidence of actual innocence, there is no miscarriage of justice so as to allow this court to review the state court decision.[6]

### E.      Ineffective Assistance of Counsel

Avila argues as Ground 4 of his habeas petition that trial counsel provided ineffective assistance of counsel in connection with the alleged errors in the jury charge discussed above, and for his failure to object to ballistics evidence. As the SJC concluded, "[b]ecause the judge did not err with respect to these jury instructions on unlawful killing,

---

[6] The recent case of Williams v. Illinois, – U.S. – , 132 S. Ct. 2221 (2012), calls into question the SJC ruling that the admission of the testimony relating to the content of the autopsy report was in error. In Williams, the Court found no violation of the Confrontation Clause when an expert in a rape case expressed an opinion based on a DNA profile produced by an outside laboratory. The Court ruled that "[o]ut-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause." Id. at 2228. In light of Avila's procedural default, and the consequent limited review by this court, however, further exploration of the parameters of the Confrontation Clause vis-à-vis Dr. Flomenbaum's testimony is not necessary.

provocation manslaughter, and self defense, [and because a <u>Bowden</u> instruction was not required under either federal or state law], trial counsel was not ineffective for failure to challenge the jury instructions." <u>Avila</u>, 454 Mass. at 769, 912 N.E.2d at 1033.  For the reasons detailed herein, trial counsel's failure to object to the ballistics evidence also does not rise to the level of ineffective assistance of counsel.

### 1.   Facts Relating to Ballistics Evidence

In his appeal to the SJC,[7] Avila argued that his trial counsel was ineffective in failing to file a pre-trial motion challenging the anticipated ballistics testimony.  SA 138-40.  He argued, <u>inter alia</u>, that "[t]he Commonwealth's expert should not have been allowed to testify as to any conclusions of fact without any supporting documentation and photomicrographs supporting such conclusions of fact[,]" that the expert "testified that he did not follow protocols in the process of making firearm identification in this case," thereby rendering his testimony "speculative," and that his counsel should have filed a "Daubert" motion because the Commonwealth "failed to show general acceptance and that the evidence was reliable or valid[.]"  <u>Id.</u>  The SJC rejected Avila's contention that the failure to challenge the ballistics evidence was ineffective assistance of counsel.  As the Court held:

---

[7]  Avila's ineffective assistance of counsel arguments, as well as challenges to the alleged errors in the jury instructions, except the absence of a <u>Bowden</u> instruction, are included in his "Pro Se Moffett Brief."  A "Moffett Brief" allows an indigent defendant to supplement his appointed counsel's brief with arguments counsel did not feel were warranted on the record.  <u>See</u> <u>Commonwealth v. Moffett</u>, 383 Mass. 201, 208-09, 418 N.E.2d 585, 591-92 (1981).

> Trial counsel was not ineffective in failing to make a *Daubert-Lanigan* challenge to the ballistics testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-593, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Commonwealth v. Lanigan*, 419 Mass. 15, 641 N.E.2d 1342 (1994). At the time of the defendant's trial and at present, there is a dearth of appellate or indeed any case law accepting a *Daubert-Lanigan* challenge to ballistics evidence. Moreover, while the defendant argues that there was a need for "photomicrographs" and additional documentation to support the ballistics testimony, he does not explain what this additional documentation would have shown or what it would have accomplished for his case. See *Commonwealth v. Satterfield*, 373 Mass. 109, 1145, 364 N.E.2d 1260 (1977). There was no error.

Avila, 454 Mass. at 769, 912 N.E.2d at 1033-34 (footnote omitted).

In support of his habeas petition, Avila argues:

> The SJC's finding that as of Sept. 15, 2009, there is no case law accepting a *Daubert-Lanigan* challenge to ballistics evidence is simply erroneous. This very court has previously limited ballistics evidence in *United States v. Green*, 1:02-cr-10301. A ballistics challenge could have excluded the criminalist's testimony herein, and trial counsel was ineffective in failing to pursue such a challenge. The petition should be allowed.

Pet. Mem. at 13.

### 2.   **Analysis**

The well-recognized standard for ineffective assistance of counsel is set forth in

Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As the

Strickland court held, to establish a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing

that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064.  See also Knowles v. Mirzayance, No. 07-1315, 2009 WL 746274, at *7 (U.S. Mar. 24, 2009) ("defendant must show both deficient performance and prejudice in order to prove that he has received ineffective assistance of counsel").  "Under the first prong of Strickland, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight."  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065).  "It is only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it, that the ineffective assistance prong is satisfied."  Id. (quotations and citation omitted).

"Under the prejudice prong, not all errors by counsel are sufficient to meet the standard of a reasonable probability that, but for the counsel's errors, the result of the proceeding would have been different."  Id.  The probability must be "sufficient to under-mine confidence in the outcome," and the burden is a "heavy" and "highly demanding" one.  Id. (internal quotations and citations omitted).  "A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong."  Id.

In the instant case, Avila has not cited any published Supreme Court cases (or even cases from this Circuit) accepting a Daubert challenge to ballistics evidence. The law in Massachusetts remains unchanged. See Commonwealth v. Heang, 458 Mass. 827, 845, 942 N.E.2d 927, 943 (2011) (no Daubert-Lanigan hearing required before court denied challenge to ballistics evidence since the proffered testimony "has long been deemed admissible by this court"). See also Commonwealth v. Powell, 78 Mass. App. Ct. 1123 at *3, 940 N.E.2d 521 at *3 (2011) (table) (unpub. op.) (noting "as the Supreme Judicial Court recently did, that there is a dearth of appellate or indeed any case law accepting a Daubert-Lanigan challenge to ballistics evidence") (citing Avila). It is not ineffective assistance of counsel to fail "to pursue a futile tactic." Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999).

Moreover, Avila has failed to establish that he was prejudiced by counsel's failure to object to the ballistics evidence. There is no indication of what the results of the proposed challenge to the expert testimony would have established. This is fatal to Avila's habeas claim.

For all these reasons, this court concludes that Avila has failed to establish a claim for habeas relief based on ineffective assistance of counsel.

**F.      Cumulative Errors**

Avila's final contention, as alleged in Ground 9 of his habeas petition, is that "[t]he cumulative effect of all the errors created a substantial risk of a miscarriage of justice." It is well established even where individual errors may not require reversal, a combination of

errors may "disfigure the proceedings so significantly as to undermine our confidence that the defendant received a fair trial." United States v. Gonzalez-Melendez, 594 F.3d 28, 37 (1st Cir. 2010) (citing United States v. Sepulveda, 15 .3d 1161, 1195-96 (1st Cir. 1993)). "In considering a claim of cumulative error, we look to the impact of a number of variables, such as the nature and number of the errors, their interrelationship, if any, how the [trial] court dealt with the errors as they arose, the length of the trial, and the strength of the government's case." Id.

In the instant case, the SJC rejected this argument summarily, finding that "[b]ecause we find that the judge did not commit the errors claimed, we have no reason to consider the cumulative effect." Avila, 454 Mass. at 769 n.28, 912 N.E.2d at 1034 n.28. For the same reason, this court concludes that Avila has failed to state a claim for habeas relief on the grounds of cumulative errors.

## IV. **CONCLUSION**

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the habeas petition be DENIED.[8]

---

[8] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-

    / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

---

54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).